Frank E. Moores, Mayor, et al. v. State of Nebraska, ex rel. I. J. Dunn et al.

Filed April 7, 1904. No. 13,567.

1. **Mandamus:** Discretion of Court. While the courts, in the exercise of a sound discretion, will not issue the writ of mandamus, even to vindicate a technical right, where more harm than good will result through its interference with municipal administration, such considerations are addressed to the trial court. Only in a clear case of abuse of discretion would the granting of a mandamus be reversed for such a cause.

2. ———: Gambling. Where a number of prosecutions have failed to bring about the closing of a public gambling house, the exist-

ence of the remedy by complaint and arrest on warrant of the offenders will not prevent a writ of mandamus to require the mayor and chief of police of a metropolitan city to use their summary powers to prevent such open violation of law.

3. Cities: DUTIES OF MAYOR AND CHIEF OF POLICE. The statutes of this state require the mayor and chief of police of such city to actively interfere to prevent or stop open violations of law.

4. Mandamus: MOTIVES OF RELATOR. That one of two relators, asking a mandamus, admits that his leading motive in assailing a "pool room," whose closing was the object sought, was the belief that a certain citizen, who had actively assisted its operation, was interested in its profits, is no ground for reversing a judgment in favor of the relators.

5. Evidence: POOL ROOM. Evidence *held* to sustain the district court's conclusion that the "pool room" in question was a "room to be used or occupied for gambling within the statutes of the state of Nebraska."

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*W. J. Connell,* for plaintiffs in error.

*Lysle I. Abbott* and *I. J. Dunn, contra.*

HASTINGS, C.

This is an error case brought to reverse the granting of a peremptory writ of mandamus by the Douglas county district court. The action was brought by I. J. Dunn and L. I. Abbott not only against Frank E. Moores, mayor, and John J. Donahue, chief of police in the city of Omaha, who are plaintiffs in error, but also against the members of the board of fire and police commissioners and P. J. Mostyn, acting chief of police. A demurrer on behalf of the board to the petition was sustained. The acting chief of police, Mostyn, had ceased to exercise such functions before the hearing and was dismissed. A peremptory writ was awarded against the chief of police, commanding him to forthwith arrest or cause to be arrested all persons found violating the laws of the state or the ordinances of the city relating to gambling, or operating or maintaining

a gambling room for the purpose of unlawful gaming at number 1313 Douglas street, known as "The Diamond Pool Room," and directing him to at once take action to detect all persons there engaged in such violation of the laws of the state and of the city ordinances. A peremptory writ was also awarded against the mayor, commanding him to cause this to be done by the chief of police, and to order the chief of police and, through him, the officers of the police department to detect and arrest all persons engaged in the violation of the laws of the state at the place designated. The costs of the action were taxed against the respondents, Moores and Donahue.

The mayor and chief of police filed a motion for a new trial, on the grounds that the decision was not sustained by the evidence and was contrary to law; that the findings that relator, Abbott, was acting in good faith and that there was no conspiracy between the relators were contrary to the evidence and not sustained by it; that the peremptory writ does not conform to the alternative one; that the writ requires acts in excess of respondents' duties; that upon the finding that Dunn was not acting in good faith the action should have been dismissed; that under the findings of law made by the court the action should have been dismissed, and that the judgment for costs was unlawful and unjust. From the overruling of this motion the respondents, Moores and Donahue, having filed a supersedeas bond, bring error.

The sole action which the mayor and chief of police are required by the peremptory writ to take is to proceed to use the powers and resources of the police department of the city of Omaha to suppress open violations of the statutes of Nebraska, and of the ordinances of the city of Omaha, in the matter of gambling and conducting a room for the purpose of unlawful gaming at number 1313 Douglas street in that city. The trial court thought that, under the evidence produced in this case, the mayor and chief of police should be required to do this. They say not, and they give four reasons why this court should reverse

the action of the district court and vacate the judgment: "1st. That the wrong complained of is not of so grave a character as to warrant interference by mandamus, and to so interfere would be for the court to assume the administrative functions of the municipal government. 2d. Other adequate and appropriate remedies exist. 3d. It is not the duty of the mayor or chief of police to do the things required. 4th. The action was not instituted or prosecuted by the relators in good faith."

The facts seem to be, that at number 1313 Douglas street in the city of Omaha, in the back part of a room, whose front is occupied by what is known as the "Diamond Saloon," under license for the sale of intoxicating liquors, and is used for that purpose, is openly and publicly carried on what is called a "pool room." The dates of races in different parts of the country and the names of the horses entered are posted upon a blackboard and, opposite the name of the horse, is posted the odds against his winning in that particular race; any customer, who desires to bet upon any horse, pays in his money and receives a ticket entitling him, in the event of that horse's winning, to the odds posted opposite the horse's name on the board.

The trial court found that the business of selling pools on horse races had been carried on there since some time in January, 1903, up to the trial of the action, which was finished November 30, 1903. The selling and buying of pools on horse racing was found to be betting on the same; the fixtures used in this pool room, a blackboard and a telegraph instrument, chairs, counters, drawers, books, pencils, tickets, pen, ink and sheets on which memoranda are kept of tickets and pools sold, were found not to be gambling devices within the meaning of the statute. Both the mayor and chief of police were found to have had notice before the bringing of this action that such pool room was conducted at the place designated, but not actual knowledge of the fact.

The court found, as matters of law, that selling pools upon horse racing is gambling within the meaning of the

Nebraska statute; that the keeping and maintaining of a room, where the public is invited to come for such purpose, constitute the offense of keeping a room for gambling purposes within the statutes of Nebraska. It found that it is the duty of the mayor of the city of Omaha to see that the criminal laws of the state and the city ordinances are enforced; that it is his duty, through the chief of police and the police force of the city, to ascertain, where he has reason to suppose such to be the facts, whether or not the laws are being violated, and, if such is the case, he should see that a proper information is filed, and that the persons violating the laws are arrested by the police and prosecuted; and that, in case the chief of police or the police force neglect such duty, it is the mayor's province to order them to do it; that it is the duty of the chief of police of his own volition, if he has cause to believe that the criminal laws are being violated, to make an investigation, and arrest persons found breaking the law, and hold them until a complaint is filed and a warrant issued, and to use all lawful means to bring such parties to trial; that, when a complaint is filed, and a warrant issued, it is his duty to arrest the person charged in the complaint, and investigate and ascertain, as far as he can, whether the offense has been committed; after so doing, he should submit his proofs to the officer having charge of the prosecution.

Upon these findings the peremptory writ of mandamus against the mayor and chief of police was allowed, and the costs of the action adjudged against them; and, to obtain a reversal of such order, they now urge, as above stated, that there is nothing to warrant the court's interfering with the administrative functions of the municipal government; that other and better remedies exist; that the mayor and chief of police are under no duty to perform the acts required, and that relators are not acting in good faith.

A moving picture was drawn at the argument of the condition of matters in the city of Omaha, if this court were to interfere by mandamus to control the action of the city's police officers in reference to every trifling offense

against state laws or city ordinances which may take place there. It seems sufficient to say that the upholding of the mandamus issued by the district court in this case does not commit this court to such a position. This objection merely raises an appeal to the sound discretion of the trial court, and not a bar to the action. No claim is made, or can be made, that these officers have a discretion which the courts may not interfere with, as to whether or not they shall discharge their duties under the law. It is quite true, as stated in *People v. Listman,* 40 Misc. (N. Y.) 372, 82 N. Y. Supp. 263:

"The existence, therefore, of the numerous methods described above by which the relator can obtain his object without application to the supreme court, is, in itself, no sufficient answer to such an application. But after all the writ of mandamus is an extraordinary remedy, and whether it shall or shall not be granted in a specified case rests largely in the sound discretion of the court. There is no doubt that there are circumstances where such a power may be wisely exercised. It might well be that cases might arise where the neglect of the municipal officer is so flagrant, where the wrong is of so grave a character and where the public interests involved are so important that the court will not hesitate to resort to this remedy. But it should be used with caution. Ordinarily it is far better that the usual course should be pursued."

The case last cited is reprinted in full in the respondents' brief. In it the New York supreme court, at a special term in Onondaga county, refused a mandamus against a commissioner of public safety of the city of Syracuse, requiring him to enforce general laws prohibiting labor on Sunday, and public dramatic performances on that day. On a complaint made to the commissioner of the character of the performances, he caused two officers to attend one of the performances, which were styled by those conducting them "Sacred Concerts"; on the report of the two officers, the matter was presented to the police justice of the city of Syracuse, who refused to issue a

warrant, on the ground that the concerts were not a violation of law. The commissioner declined to do anything further. An application was made for a mandamus to compel him to attend personally, or cause his officers to attend, the concerts, and to arrest, or cause to be arrested, without a warrant, the persons holding them, if they were found to be an offense against the laws of the city. The supreme court in that case adjudges it better that the performances be proceeded against in the ordinary manner because, if the police judge refused to issue a warrant, recourse might be had to any one of the several other magistrates, and the police judge, if necessary, removed.

The case of *Alger v. Seaver*, 138 Mass. 331, is also cited as refusing a mandamus against a municipal officer. The court say:

"As applications for the writ of mandamus are addressed to the sound judicial discretion of the court, the circumstances of each case must be considered in determining whether the writ shall issue."

The circumstances of this present case have been considered, and the district court, in its discretion, decided that as against the mayor and chief of police the writ shall issue. There certainly does not seem to have been any such abuse of discretion as to call for a reversal of the cause merely because of it. If the duty rested upon the officers to do the things required of them and they were failing in that duty, and the relators are entitled to insist upon its performance, unless there is other clear and adequate remedy, the order allowing the writ should be affirmed.

The second objection is, that there is a clear, adequate and more appropriate remedy existing. To this it seems sufficient to say that the evidence indicates that a number of complaints—one witness for respondents says "eight or ten"—of the violation of law by the conducting of this pool room have been filed; that arrests have been made, followed by the prompt release upon bail of the parties charged, and an immediate resumption of the pool room's

business.  If the continuance of that pool room is an open, public violation of the law, the citizens of Omaha, who maintain the police to patrol its streets and prevent such violation, are entitled to have that force used in promptly suppressing such an element of disorder, especially after it appears that ordinary prosecutions do not deter the parties.  As Lord Mansfield said of the writ of mandamus: "It was introduced, to prevent disorder from a failure of justice, and defect of police."  *Rex v. Barker,* 3 Burr. (Eng.) 1266, 1268.

The third objection is, that it is not the duty of the mayor and chief of police to do the acts required.  Section 71, chapter 12*a* of the Compiled Statutes, provides as to the mayor of cities of metropolitan class:  "The mayor shall be the chief executive officer and conservator of the peace throughout the city, and shall have power, by and with the concurrence of the board of fire and police commissioners, to appoint any number of special policemen which he may deem necessary to preserve the peace of the city, and to dismiss the same at pleasure."  Section 73 makes it his duty to see that the provisions of the law and the city ordinances are enforced.  Section 171 of the same chapter provides as to the chief of police: "The chief of police shall be the principal ministerial officer of the corporation; he shall, by himself or by deputy, execute all writs and process issued by the police judge; he, or one of his deputies, shall attend on the sitting of the police court and preserve order therein; and his jurisdiction and that of his deputies in the service of process in all criminal cases, and in cases of the violation of city ordinances shall be coextensive with the county."  Section 172:  "He shall be subject to the orders of the mayor in the suppression of riots and tumultuous disturbances and breaches of the peace; he may pursue and arrest any person fleeing from justice in any part of the state."  Section 173: "He shall have, in the discharge of his proper duties, like powers and be subject to like responsibilities, as sheriffs in similar cases."  Among the duties of the sheriff as defined in sec-

37

tion 119, article I, chapter 18, Compiled Statutes, are:
"The sheriff and his deputies are conservators of the peace,
and to keep the same, to prevent crime, to arrest any per-
son liable thereto, or to execute process of law, may call
any person to their aid; and, when necessary, the sheriff
may summon the power of the county." And section 283
of the criminal code provides: "Every sheriff, deputy
sheriff, constable, marshal, or deputy marshal, watchman,
or police officer shall arrest and detain any person found
violating any law of this state, or any legal ordinance of
any city or incorporated village, until a legal warrant can
be obtained."

It seems clear that it is the duty of both the chief of
police and the mayor to interfere for the prevention of the
public violation of the laws, and that seems to be all which
is required of the officers by this mandamus; they are to
see that the police officers under their charge investigate
the alleged open violation of the law at a given place, and
arrest such parties as are found in the act of violating it,
and are to take measures for their prosecution. If it be
granted, as the trial court found, that an open and public
violation of the law is going on there, it would seem that
it is clearly within the prescribed duties of these officers to
take such steps.

The fourth objection raised is, that the action was not
instituted or prosecuted by the relators in good faith.
This rests upon the trial court's finding that one of the
relators, I. J. Dunn, was influenced in his action more
by the desire to "affect" one Thomas Dennison than by a
desire to enforce the laws of this state. It was, however,
found that, so far as the other relator was concerned, the
proceedings were in entire good faith. The soundness of
this conclusion is not disputed. The relator, Dunn, owned
to having taken, as assistant county attorney, various
steps toward the prosecution of Dennison on various ac-
tions, and declared that a large share of his desire to sup-
press the pool room was from his belief that Dennison
shared in its profits. This, no doubt, together with a mass

of evidence as to Dunn's action as assistant county attorney, the relevancy of which is not perceived, was the basis of the finding, which was in the following terms: "The court further finds, as a matter of fact, that the relator, I. J. Dunn, is not acting in good faith in bringing and prosecuting this action, in this, that he brings and prosecutes this action primarily for the purpose of affecting one Thomas Dennison, and his desire for enforcing the law is a secondary consideration." The court, however, found that the action was not brought nor prosecuted in pursuance of any wrongful conspiracy or combination. The action of the relators seems to have been at the request of a number of prominent and respectable citizens of the city, and there seems no reason, in the fact that Mr. Dunn was actuated by a conviction that Dennison had an interest in the pool room and a desire to drive him out of that business, to dismiss the proceedings. It appears from the evidence of Dennison himself that he has no such interest at the present time, and he declares that such action as he has taken in regard to the pool room was solely on account of friendship for its proprietor, Chucovich. There seems no reason to reverse the action of the district court because of Mr. Dunn's appearance as one of the relators.

The real turning point in the case seems to be the question, whether or not the keeping of a pool room, such as the evidence discloses, is a violation of the law, the prevention of which the courts will enforce by a writ of mandamus. The officers seem to have regarded it, in the words of police commissioner Broatch, as "no more a violation of law than is the grain bucket shop." There seems to have been something like an understanding that the city authorities would not, of their own volition, interfere with its operation, if they were conducted without disorderly accompaniments. No attempt, however, is made at the present hearing to defend the lawfulness of this business. No complaint is made as to the correctness of the district judge's findings, that pool selling is gambling, and that the maintaining of a place where the public are invited to

come and buy pools upon races is the maintaining of a gaming house, under the laws of this state.

All laws for the suppression of vice are subject to evasion. Doubtless gambling is a vice and so distinguishable from crime. Like all other vices, the most that can be done toward its suppression is to prevent its open and public indulgence to the demoralization of society. So long as the laws of the state of Nebraska make the public maintaining of gambling places unlawful, so long it would seem to be the right of citizens, who believe that openly and publicly advertising them and their business is dangerous and demoralizing to the community, to insist that public officers, selected for that purpose, should carry into execution the laws dealing with such places. It seems sufficiently to appear, in the present case, that ordinary remedies had been tried and found powerless to answer the purpose of the statute in question, the closing up of an open and public gaming house.

It is recommended that the judgment of the trial court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.