State, ex rel. Cox, v. McIlravy.

STATE, EX REL. DAVID W. COX ET AL., APPELLANTS, V. FRANK D. MCILRAVY ET AL., APPELLEES.

FILED FEBRUARY 10, 1921. No. 21255.

1. Estoppel: MUNICIPAL CORPORATIONS. The doctrine of estoppel *in pais* has application to municipal corporations, and city councils or public authorities will be estopped or not as justice and right may require.

2. ———: ———. When the intervening railroad company acted in good faith under affirmative acts of the city council and made permanent and expensive improvements, it would be inequitable and unjust to destroy the rights so acquired. Then, in that situation, the doctrine of equitable estoppel will be applied.

3. Mandamus: DISCRETION. The issuance of a writ of mandamus is not a matter of strict legal right, but is discretionary with the court.

4. ———: ———. "While the courts, in the exercise of a sound discretion, will not issue the writ of mandamus, even to vindicate a technical right, where more harm than good will result through its interference with municipal administration, such considerations are addressed to the trial court. Only in a clear case of abuse of discretion would the granting of a mandamus be reversed for such a cause." *Moores v. State*, 71 Neb. 522.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*W. T. Thompson,* for appellants.

*Jesse L. Root, Byron Clark, L. C. Chapman* and *S. P. Davidson, contra.*

ALDRICH, J.

This is an action in mandamus commenced by one David W. Cox and wife against the city council of Tecumseh and the Chicago, Burlington & Quincy Railroad Company, as intervener, to compel the removal of certain obstructions at certain street intersections. The city of Tecumseh is one of the second class with a population of between 2,000 and 3,000. Its streets run north and south and east and west. The railroad tracks and depot of defendant railroad company are located upon Webster street, which runs east and west. The depot is situated between Third and Fourth streets, which run north and south. Approximately 25 families live south of Webster street. The public schools are located north of Webster street. Sixth and Seventh streets, running north and south and crossing Webster street, have been closed for many years by reason of the tracks of the railroad company.

On July 12, 1916, the city of Tecumseh undertook by ordinance to grant and convey to the defendant railroad company the intersections of Fourth and Fifth streets where they intersect with Webster street. Thereafter the defendant constructed coal chutes and extensive brick unloading platforms in these intersections, completely obstructing public travel on Fourth street at its intersection with Webster street, and obstructed all travel on Fifth street at its intersection with Webster street, except foot travel.

This is an application for a writ of mandamus against the defendant city council of Tecumseh and the Chicago, Burlington & Quincy Railroad Company, intervener, whom we will hereafter denominate as defendants, and the relators as plaintiffs. Section 5141, Rev. St. 1913, provides: "The city council or board of trustees shall have

the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city or village, and shall cause the same to be kept open and in repair, and free from nuisances." The petition alleges that Fourth and Fifth streets in the city of Tecumseh are the principal streets, duly platted and dedicated to the public, and that the plaintiffs are citizens, property owners and taxpayers residing within this city. The defendants, as a reason or justification for their refusal to perform the duty enjoined upon them by section 5141, Rev. St. 1913, allege that the refusal is in accordance with the passage of ordinance No. 138, and a plea of estoppel. The defendant railroad bases its defense to plaintiffs' cause of action upon ordinance No. 138, which is in words and figures as follows:

"ORDINANCE NO. 138.

"An Ordinance granting portions of Fourth and Fifth streets, where same intersect with Webster street, to the Chicago, Burlington & Quincy Railroad Company and their successors.

"Be it Ordained by the Mayor and Council of the City of Tecumseh: Section 1. That, whereas the Chicago, Burlington & Quincy Railroad Company have signified their intention and are about to erect a new depot in Tecumseh, and as a matter of safety for its patrons, and the necessity and convenience of said company, it becomes necessary to change the present location of buildings, tracks and yards, there is hereby granted to the Chicago, Burlington & Quincy Railroad Company, its successors and assigns, for railroad and depot grounds and purposes all that part of Fourth street between blocks 41, 42, 60 and 61; also all that part of Fifth street between blocks 42, 43, 59 and 60, being that portion of ground where said Fourth and Fifth streets intersect with Webster street, heretofore vacated; this privilege is granted in consideration that said railroad company will build and maintain between Third and Fourth streets on its property in or south of block 41, a modern depot at a

State, ex rel. Cox, v. McIlravy.

cost of approximately $20,000, and will further keep said Fifth street open for travel and keep and maintain a good sidewalk of brick or concrete over its property on said street for such purposes and will also keep open for travel with vehicles a strip of ground owned by said company, being described as the south 35 feet of the north half of the north half of blocks 60 and 61; and provided that, by the acceptance of the privileges hereby granted, the said railroad company agrees to save and keep the city of Tecumseh harmless from the payment of any costs, damages or expenses growing out of the exercise of the right hereby conferred in favor on any person whomsoever.

"This ordinance shall be in force after its passage, approval and publication according to law.

"Presented and regularly passed under suspension of the rules on July 12, 1916. Published July 15, 1916.

"(SEAL) W. H. Taylor, Mayor.

"Attest: W. J. Devenney, City Clerk."

After carefully looking through the law propositions as involved in appellants' contentions and perusing with equal care the contentions of appellees, we are of the opinion that the propositions of law numbered 9 and 10 of appellees' brief are decisive of the issues in this case. We choose to decide the issues and determine the rights of the parties involved on the doctrine of estoppel, and show wherein it has application to issues herein, and show why the doctrine of mandamus does not apply in enforcing rights which are in substantial dispute or when a substantial doubt exists. Then it is true that a writ of mandamus is only granted as a matter of sound judicial discretion. It is only a legal remedy based on equitable principles.

A city does not lose its rights in a public street by mere nonuser, but if there are other circumstances in connection with the case which are sufficient, together with the nonuser, to raise a presumption of abandonment, such rights are deemed to be lost.

The defendant entered into a contract by way of an ordinance to vacate, abandon and turn over to defendant railroad company certain of its streets, and alleges in consideration of which the defendant railroad company expended, approximately, $20,000 or $25,000 in building a new depot, coal chutes, switches and approaches to its railroad grounds in the city of Tecumseh. The doctrine of estoppel *in pais* is applicable to municipal corporations, and it is equally true that city councils or public authorities will be estopped or not as justice and right may require. There may be cases where to assert a public right would be an encouragement and promotion of fraud, but where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights so acquired, then the doctrine of equitable estoppel will be applied. *People v. City of Rock Island,* 215 Ill. 488, 106 Am. St. Rep. 179.

If the defendant railroad company acted in good faith under the affirmative acts of the city council and made many expensive and permanent improvements, it would be highly inequitable and unjust to destroy the rights acquired and entail a vast expenditure of time and money.

Permanent improvements and great expenditures were made under and by virtue of the contract entered into between the public and defendant railroad company, which would not have been made but for the positive action of the city and its officials, and to compel the abandonment of the premises for use as depot grounds would be contrary to natural justice. The relators cannot demand the writ of mandamus in this case as an absolute right, but it is granted or withheld in the exercise of sound judicial discretion, in view of all the facts and circumstances. The relators are citizens of this community. Therefore their inconvenience or annoyance is no different from that of the rest of the community. They suffer no greater inconvenience possibly than the rest of the public, and to receive the benefit of an organized

city government one may occasionally be obliged to fore-
go some minor right or inconvenience to the great and
general benefit of the entire community.  The doctrine of
cost and compensation applies to the citizenship of a
city or common community.  It is the general doctrine
that every cost and privation has its compensation.  So
in building these buildings and constructing these
grounds there is a general compensation for every cost
and a blessing and convenience for every inconvenience
or annoyance that might incidentally result.  This depot
and grounds are a matter of civic pride to the citizens of
the city of Tecumseh and should not be marred by reason
of the slight inconvenience to 25 of its families.  It is
a circumstance properly to be considered by the court in
the exercise of its discretion.

We think the trial judge in rendering his decision act-
ed justly and equitably in behalf of all parties concerned
and conferred a lasting benefit upon a thrifty and prosper-
ous city.  This in substance states the general doctrine of
the law of equitable estoppel.  It steps in and overrides
the more or less harsh legal remedy of the writ of man-
damus.  These plaintiffs in their acquiescence import know-
ledge and assent to what happened.

It has been suggested that this ordinance may invoke
the question of *ultra vires.*  This question or any defects
that might be mentioned by virtue of the ordinance are
not involved in this case.  All this agreement amounts
to is that it creates a contract between the defendant,
the city of Tecumseh, and the intervening railroad com-
pany.  It was a just and equitable contract, because all the
people participated in its benefits and advantages, and as
a result the defendant city received the benefits and con-
veniences of a splendid new depot and all accouterments
pertaining to it.  To order the intersections of some of
the streets and alleys involved in this new structure to
be vacated and abandoned by the defendant railroad com-
pany would be an act of bad faith.  The defendants had
a right to enter into the contract which they did and

which the city got the benefit of. This doctrine has been announced in substance by this court in *State v. Wallichs,* 12 Neb. 234.

After receiving the benefit of this expensive permanent improvement, it seems to us the city should be estopped from nullifying it by destroying its usefulness for the benefit of a few families. The doctrine of estoppel affords a complete and adequate remedy to the issues presented. *State v. Stearns,* 11 Neb. 104. It may be said in this connection that a writ of mandamus is not a writ of right.

The doctrine of estoppel *in pais* is applicable, and simply used to promote justice, equity and fair dealing between the parties involved. It resolves itself into a question of justice and equity to prohibit fraud and inequity, and as a general rule, when equitable estopple is once established by the evidence or the facts in a case, it operates as effectively as a deed or a record. It is the law that estoppel is commensurate with the thing represented and operates to put the party entitled to its benefits in the same position as if the thing represented were true. It is a fundamental part of the doctrine of equitable estoppel that the estoppel extends only so far as may be necessary to protect from loss the party entitled to assail it. The estoppel can neither be extended beyond nor cut below the natural reasonableness of the representation. As a general rule the doctrine of equitable estoppel applies to rights and liabilities under contracts.

The history of the railroad and its occupancy in the city of Tecumseh shows that a writ of mandamus at the suit of a private relator suing as a citizen was properly denied by the court in the exercise of its discretion. *People v. City of Rock Island,* 215 Ill. 488. Mandamus is a discretionary writ, and will only be allowed in furtherance of justice upon a proper showing. *Donahue v. State,* 70 Neb. 72; *Moores v. State,* 71 Neb. 522; *State v. Hendee,* 74 Neb. 847. The writ of mandamus in this instance is not a mere writ of right. It is a legal remedy granted along equitable principles. We must conclude from this entire discussion that mandamus only will be resorted to under conditions of

necessity or exceptional circumstances. We do not believe that the court in exercising its discretion in refusing this writ did anything other than justice, and substantially served a worthy, popular demand of the overwhelming majority of the city of Tecumseh.

There are many other propositions of law earnestly mentioned and discussed by the parties to this action, but we believe we have made it plain that in upholding the finding of the lower court we have rendered to the citizens of the city of Tecumseh and invaluable and beneficent service, and therefore it is our duty, and in accordance with the doctrine of equitable estoppel, to do substantial and plain justice to the greatest good according to the greatest number. The judgment of the lower court is

AFFIRMED.

LETTON, J., not sitting.