STATE, EX REL. THURSTON J. LONG, APPELLEE, V. ARTHUR H. BARSTLER, COUNTY CLERK, APPELLANT.

FILED DECEMBER 31, 1931. No. 28175.

*George H. Heinke,* for appellant.

*Andrew P. Moran, Edwin Moran* and *D. W. Livingston,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

The defendant appeals from a judgment granting a peremptory writ of mandamus against him.

At the regular election in the city of Nebraska City on November 4, 1930, a majority of the electors voted for a proposition submitted, to the effect that the proper officers of the city should make an annual levy on all taxable property in the city sufficient to raise annually the sum of $1,800 for a period of four years, to provide for the salary and expenses of a visiting, community nurse for the city. Comp. St. 1929, sec. 71-2407. Under this statute it is the duty of the city authorities to include the item in the estimate for expenses during the period for which adopted. The tax is to be levied and collected in the same manner as other taxes.

The city authorities failed to include this item, or any amount for this purpose, with the other city expenses required to be included in their estimate certified to the county clerk and to be levied on the last day of its sitting by the county board of equalization. Comp. St. 1929, sec. 77-1801, amended, Laws 1931, ch. 137, Comp. St. Supp., sec. 77-1801. This last day of sitting in 1931 was on August 5 and the tax levied by the board for Nebraska City purposes of course did not include this item. The

total levy for Nebraska City was 14 mills. Had this item been certified and levied it would have made a total levy of 14.35 mills. Thereupon, on August 8, 1931, this same relator brought a mandamus action against the city, its mayor and commissioners, to compel them to certify the item in question to the county clerk to be included in the taxes of 1931. On August 29, 1931, after a full trial, the court granted a peremptory writ, ordering the city officials to convene and certify the amount to the county clerk within 30 days. The respondents were denied supersedas, but appealed that cause to this court, where it is pending as No. 28192. However, on September 26, 1931, they obeyed the unsuperseded order, made an amended estimate as commanded, including the levy for the visiting nurse fund, certified it and delivered the certificate to the county clerk on September 28, 1931. Section 77-1801, Comp. St. 1929, provides: "Any such taxes * * * certified to the county clerk, after the county board shall have made such levy and before the county clerk shall have completed the tax list, shall be levied by the county clerk, if within the limit of the law, and extended upon the tax list the same as if levied by the county board."

After the county board of equalization adjourned on August 5, 1931, all taxes levied by that board were certified to the county clerk and he proceeded to compute the taxes and extend them on the tax list in suitable books, properly ruled, headed and prepared in the manner provided by law. Section 77-1806, Comp. St. 1929, requires him to complete and deliver the tax list to the county treasurer on or before the 1st day of November annually. The county clerk completed and delivered the tax list to the county treasurer on September 19, 1931. So that list did not include the levy for the purposes of a visiting nurse for Nebraska City because, as we have recited, the certificate for that purpose was not actually delivered to him until September 28, 1931.

Upon receiving the certificate, as to this additional levy, on September 28, 1931, the county clerk refused to place

the levy upon the tax books of the county. Nothing was done for nearly four weeks until on October 24, 1931, when this mandamus action was begun to compel him to enter the levy upon the tax books. He demurred to the alternative writ and affidavit upon which it was based. Upon the overruling of the demurrer, he answered, setting up most of the historical facts above stated, reciting the expenses and difficulty of revising or rewriting the lists, and pleading lack of legal authority to add the tax. Upon issues joined there was a trial to the court on October 30, 1931, and on the same day a peremptory writ was granted commanding the county clerk forthwith to enter the special levy. The final order dismissed the county treasurer and the county attorney, who were also respondents. Motion for new trial was overruled and the court denied a request to allow supersedeas. The cause was promptly appealed here and on November 5, 1931, we allowed a supersedeas. The bond was approved and filed Novembr 7, 1931. Most of the facts were stipulated.

The evidence shows that the rewriting or interlining of the tax lists, if done in that way, so as to show this additional levy, would require thousands of entries upon upwards of 200 pages, would take two or more weeks of time with the defendant's usual office force and one additional person to be hired for that purpose, with its necessary cost and interference with the usual work of the clerk's office; that the treasurer has had 11,000 tax receipts printed with the usual and necessary matter on the front and back; but not devised with a view to this additional tax; that on October 30, 1931, at the time of the trial, 170 tax receipts had already been issued by the county treasurer, receipting "in full for the following taxes for the year 1931," the printed receipt showing on the back thereof a total levy of 14 mills for Nebraska City and the front thereof showing in its proper column the amount of the tax paid by the city taxpayer. It is fair to assume that since the date of the trial several hundred would have paid their city taxes in the usual course and to avoid in-

terest. The evidence is free from proof that the defendant connived or conspired with the city authorities or anyone else to defeat or prevent the additional levy desired by relator and by those in whose interest relator acted.

"To warrant the issue of mandamus against an officer to compel him to act, a duty to do so must be imposed upon him by law; the entire scope of the writ in this respect is to compel the officer to perform his duty and cannot be invoked to enlarge or confer a power upon him to act. The duty sought to be enforced must be a duty which still exists at the time when the application for the writ is made; and it has frequently been asserted that the duty to act must be clear." 18 R. C. L. 117, sec. 31. See 38 C. J. 582; *State v. Colby,* 107 Neb. 372; *Gutschow v. Ramser,* 87 Neb. 591; *State v. Weston,* 67 Neb. 175; *State v. Whipple,* 60 Neb. 650; *State v. Bartley,* 50 Neb. 874; *State v. Bowman,* 45 Neb. 752; *State v. Merrell,* 43 Neb. 575; *State v. Nelson,* 21 Neb. 572; *State v. City of Omaha,* 14 Neb. 265.

The county clerk's duties and powers with respect to tax lists are enjoined and granted by the statute. It was his duty, under section 77-1806, to complete and deliver to the treasurer on or before November 1, 1931, the list for taxes levied by the county board of equalization. He did this on September 19, 1931. The evidence shows that sometimes, in previous years, that had been done as early as September 1. After the adjournment of the county board of equalization any taxes otherwise levied must be levied by the clerk. If such taxes as those here involved are certified to him before he "shall have completed the tax list" (section 77-1801) authorized by the board, and before the list shall have been "delivered to the county treasurer" (section 77-1806), it is then his duty to levy such other tax and see that it is "extended upon the tax list" (section 77-1801). We are unable to find that he has any power to make a levy for any additionally certified taxes after he has completed and turned over to the treasurer the main tax list. He derives his authority and

power from the legislature. If it has given him none in such an important function as that of the imposition of taxes, it seems certain that he has no power to enlarge the authority given him by the legislature and to exercise authority of his own devising. His duty to act as relator desired, not only was not clear, but it seems to us that it is clear he had no authority to levy any tax after the tax list made upon the levy of the county board was completed and turned over to the treasurer. Thus he was within the rules of law above recited.

We do not desire to be understood as deciding that, if the county clerk had conspired with the city officials, or others, to prevent his levy of the city tax by a wilful disregard of the rights of the electors of the city and of his statutory duty and by unreasonably hastening the completion and delivery of the tax lists to the treasurer, we would hold that mandamus would not lie. That is not the situation here. When such a case shall be presented we reserve the right to consider and determine whether such conduct would prevent the statute from barring a further levy of taxes.

If further reason were needed for concluding that the appellant was justified in his refusal to levy the tax, it may be said that, from the record and evidence, it appears that disorder and confusion would arise out of such a levy. This confusion would result not so much from the clerical changes in the tax records as from the rights and liabilities as to the levies of the taxes in the cases of those who have already paid and obtained receipts in full for the 1931 taxes.

"Where the issue of the writ would disturb official action, or create disorder or confusion, it may be denied; and this is so even where the petitioner has a clear legal right for which mandamus would be an appropriate remedy." 38 C. J. 550. See, also, Merrill on Mandamus, secs. 71, 73; Ferris on Extraordinary Legal Remedies, sec. 202.

"Courts, in the exercise of wise judicial discretion, may, in view of the consequences attendant upon the issuance

of a writ of mandamus, refuse the writ though the petitioner has a clear legal right for which mandamus is an appropriate remedy." *People v. Board of Supervisors*, 185 Ill. 288, 293. This rule was followed later in denying mandamus where its allowance would have required a recomputation of a considerable portion of the county taxes and a readjustment of taxes already paid by some taxpayers. It is to be noted that this readjustment of taxes in the Illinois case would require refunds from the treasurer to the taxpayers, not a collection of additional taxes, as in the case at bar. *People v. Olsen*, 215 Ill. 620. The supreme court of Oklahoma reversed a judgment granting a writ of mandamus because of the delay in getting the tax rolls extended so as to collect an additional tax, even though it was stated that the petitioners had a legal right to the writ. *Board of Excise v. Board of Directors*, 31 Okla. 553. The relator contributed to the particular condition in the instant case by waiting from September 28 to October 24 to bring this action.

For the reasons stated, the judgment of the district court is

REVERSED.