STATE OF NEBRASKA EX REL. THE SCHOOL DISTRICT OF THE CITY OF GRAND ISLAND ET AL., APPELLEES, V. THE BOARD OF EQUALIZATION OF HALL COUNTY, NEBRASKA, ET AL., APPELLANTS.

90 N. W. 2d 421

Filed June 6, 1958. No. 34377.

*Gerald B. Buechler* and *Rosemary L. Mara,* for appellants.

*Harold A. Prince,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a writ of mandamus brought by the School District of the City of Grand Island against the County Board and Board of Equalization of Hall County to compel the restoration of a tax mill levy to provide $150,000 in additional funds for the school district to that which was provided by the board of equalization. The trial court granted the writ. The county board and the board of equalization have appealed.

On July 9, 1957, the school board filed with the county clerk its tax resolution in which it set out the total funds required for general school purposes at $1,298,242. The estimated income from miscellaneous sources and cash balances on hand was $249,129 over and above the necessary cash reserve and outstanding orders which had not been paid. This shows the amount of money to be raised by taxation to be $1,049,113.

The record shows that during the school year the

school board transferred $150,000 from the general fund to the building fund. It is the contention of the county board and board of equalization that this transfer of funds was unlawful and that the amount of funds to be raised by taxation was excessive in the amount of the $150,000. An error in the computation of the estimated income from miscellaneous sources in favor of the school district in the amount of $15,000 was admittedly made and no objection was raised to the correction of this item. The primary issue on appeal is the legality of the transfer of the $150,000 from the general to the building fund.

The school district does contend that the order of the board of equalization reducing the amount to be raised for general school purposes by $165,000 was void for the reason that such board had no jurisdiction to make such order at the time it purported to do so. On this question the record shows that the board of equalization failed to make a levy for school purposes on or before August 10, 1957, as required by section 77-1601, R. S. Supp., 1955. The levy was made on August 21, 1957, in the amount of 29.33 mills to raise the $1,049,113 requested. On September 3, 1957, the board of equalization reconvened and reduced the amount to be raised for general school purposes by $165,000, which resulted in a levy of 24.72 mills to raise the reduced amount of $884,113. It is the contention of the school board that the board of equalization was without jurisdiction to make the order of September 3, 1957, after adjourning sine die on August 21, 1957. Due to the conclusion at which we have arrived we do not deem this issue as material to the disposition of the case.

The school district is a Class III district. In this state a school district is a creature of statute and possesses no other powers than those granted by the Legislature. School Dist. of Omaha v. Adams, 151 Neb. 741, 39 N. W. 2d 550; Schulz v. Dixon County, 134 Neb. 549, 279 N.

W. 179, 119 A. L. R. 1294; American Surety Co. v. School Dist., 117 Neb. 6, 219 N. W. 583.

The power of a third-class school district to raise money for general school purposes is set forth in section 79-810, R. R. S. 1943, which in part states: "The board of education of a third class school district shall annually, during the month of June, report in writing to the county board the entire revenue raised by taxation and all other sources, and received by such board of education for the previous fiscal year, and an estimate for the ensuing fiscal year in form of a resolution broken down generally as follows: (1) The amount of funds required for the support of the schools during the fiscal year next ensuing; (2) the amount of funds required for the purpose of school sites; (3) the amount of funds required for the erection of school buildings; (4) the amount of funds required for the payment of interest upon all bonds issued for school purposes; and (5) the amount of funds required for the creation of a sinking fund for the payment of such indebtedness."

In 1955 the Legislature amended sections 79-431 and 79-435, R. R. S. 1943, to provide certain budgeting requirements by forms to be prescribed by the Commissioner of Education. Section 79-431, R. S. Supp., 1955, contains the following: "* * * such forms shall provide for showing the expenditures, the revenues received from taxation, and revenues available from sources other than taxation, separately stated, including the unencumbered balances available and the necessary cash reserve; * * *." Section 79-435, R. S. Supp., 1955, contains the following provision: "It shall be the duty of the county board of equalization to levy such taxes as are necessary to provide the amount of revenues from property taxes as indicated by all of the data contained in the budget and certificate herein prescribed, at the time and in the manner provided in section 77-1601."

It is provided by section 79-422, R. S. Supp., 1955, that whenever it shall be deemed necessary to erect a

schoolhouse or school buildings, or an addition or additions and improvements to any existing schoolhouse in any school district in this state, the school board or board of education may, and upon petition of not less than one-fourth of the legal voters of the district shall, submit to the people of the district at an election a proposition to vote a special annual tax for that purpose of not to exceed five mills on the dollar for a term not to exceed 10 years. A vote of 55 percent of the legal voters is required to carry such election. Bonds for the erection of school buildings are authorized as provided by Chapter 10, article 7, R. R. S. 1943.

We find nothing in the cited statutes, or any others that we have examined, which authorizes a school board to transfer money from the general fund to a building fund. The only authorization to raise funds for building purposes other than by the issuance of bonds appears to be contained in section 79-422, R. S. Supp., 1955. If, as contended by the school district, funds could be included in the general fund levy and transferred to a building fund at will, the limitations contained in section 79-422, R. S. Supp., 1955, could be completely circumvented and that section be rendered nugatory for all practical purposes. This is particularly important since the Legislature has removed all restrictions on the amount that may be levied by a Class III school district for general school purposes. See § 79-432, R. S. Supp., 1955. We think it is clear that the Legislature intended section 79-422 to be the exclusive method of raising funds for schoolhouses, school buildings, and additions, by taxing the property of the school district, except by the issuance of bonds and provisions relating thereto. By enacting section 79-422 with the limitation of the levy contained in it, the Legislature provided the maximum amount and the exclusive method of raising money for schoolhouses, buildings, and additions by direct levy on the property of the district. If this is not so, the legislation would be ineffective for any purpose, if the conten-

tions of the school district in the present case are correct. In this connection, the clause "(3) the amount of funds required for the erection of school buildings" contained in section 79-810, R. R. S. 1943, relates to the levy of taxes that has been authorized as provided in section 79-422.

It is argued that the history of the legislation dealing with this subject sustains its position. It is pointed out that section 6971, Rev. St. 1913, provided: "The aggregate school tax, exclusive of school bond taxes, shall in no one year exceed thirty-five mills." By section 79-2528, R. S. 1943, the foregoing section read in part: "The aggregate school tax, exclusive of school bond and special warrant taxes, shall in no year exceed such a sum or rate as shall be necessary to raise the sum provided for by the estimate returned in accordance with section 79-2527; Provided, that such levy shall in no event exceed twenty mills for maintenance and operation of the schools, except * * * the aggregate school tax shall not exceed twenty-two mills including not to exceed one mill for the establishment of a building fund for the repair and alteration of buildings." This section was consolidated in 1949 with other sections into section 79-432, R. R. S. 1943, and presently reads as follows insofar as applicable here: "(1) The aggregate school tax levied for general school purposes in Class I, II, III, and VI school districts shall be without restriction, except as provided in subsection (2) of this section." § 79-432, R. S. Supp., 1955. The subsection referred to has no application here. It will be noted that the provision authorizing a one-mill levy for the establishment of a building fund for the repair and alteration of buildings contained in section 79-2528, R. S. 1943, is not included in the 1955 statute. From this the district argues that the limitation of one mill being removed, the school board now has unlimited authority to use money from the general fund for building purposes.

We point out, however, that the one-mill levy referred

to was not established to raise money for the construction of schoolhouses and buildings, but for the repair and alteration of buildings. Even if such provision should be construed as a removal of the limitation for the repair and alteration of buildings, it would not relate itself to the construction of new schoolhouses, buildings, and additions. The maintenance of existing buildings is one thing, the construction of new buildings quite another.

It has been the general policy of the Legislature in recent years, as evidenced by the history of enacted legislation, to permit the issuance of bonds and the creation of building funds only by the affirmative vote of the electors of the school district as the means for raising revenue for the construction of schoolhouses, buildings, and additions. It seems clear to us that the maximum limit that could be levied for the support of schools was removed only after the general funds of the district were made unavailable for the construction of buildings and additions. No statute authorizes the transfer of money from the general to a building fund, an authorization that could easily have been provided if such had been the legislative intent. It is noteworthy that the Legislature saw fit to expressly authorize the transfer from a sinking fund to the school district any money remaining after all bonds, interest, and charges, with which the fund was charged, had been paid. § 10-715, R. R. S. 1943. The failure to make provision for a transfer of unused money in the general fund to the building fund indicates a legislative intent to withhold authority for such transfers. In fact, the clear legislative intent is that excess money in the general fund shall be applied in reduction of the amount that would otherwise be levied on the taxable property of the district for general school purposes.

We conclude that the transfer of the $150,000 from the general to the building fund was unauthorized and illegal. It should have been considered as a part of

the cash balance on hand in the general fund. Necessarily it should have been shown in the budget and estimate of the school district in reduction of the amount of money to be raised by taxation in accordance with the views expressed in Union Pacific R. R. Co. v. Troupe, 99 Neb. 73, 155 N. W. 230, and Kissinger v. School Dist. No. 49, 163 Neb. 33, 77 N. W. 2d 767. The effect of these holdings is that when a Class III school district has money in its treasury available for the support of the school during the ensuing school year, it is bound to take that fact into account in fixing the tax levy, and the levy should be made for no more than will approximately raise the difference between the amount on hand over and above the authorized reserve, and the amount determined as necessary to meet the expenses of the district for the ensuing school year. The contention that the county board is mandatorily required to make the levy to raise the amount of money requested by the school district, irrespective of a showing in the estimate and budget that such amount is not needed, appears to be dissipated by the provisions of section 79-435, R. S. Supp., 1955, wherein the county board of equalization is charged with the duty of levying such taxes as are necessary to provide the amount of revenues as indicated by all the data contained in the budget and estimate.

The school district relies heavily on Gaddis v. School Dist., 92 Neb. 701, 139 N. W. 280, to sustain its claimed authority to transfer money from the general to the building fund. The case is clearly distinguishable. As made clear in that case, the applicable statute authorized a gross levy to produce funds for the support of the schools and for sites and buildings. The holding that money in the general fund could be used for the construction of a school building is premised on the fact that the levy for general fund purposes included the cost of sites and buildings, as provided by the applicable statute at that time. Since money in the general fund was properly levied in part for sites and build-

ings by statutory authorization, the conclusion naturally follows that it could be properly applied to such purpose. But such a situation does not exist in the case before us. No statutory authority presently exists that warrants the conclusion reached in the Gaddis case.

The disposition of the issues raised by the appeal requires a consideration of the nature of an action for a writ of mandamus and the purposes for which such a writ will be granted. Mandamus is a civil remedy and is a legal as distinguished from an equitable proceeding, although issuance of the writ is largely controlled by equitable principles. The remedy of mandamus may be refused for reasons comparable to those which would lead a court of equity in the exercise of a sound discretion to withhold its protection of a strictly legal right. In other words, it will be issued ordinarily only to prevent injustice and not to promote it. It is not a writ of right. In determining whether or not the writ should issue, the court should consider the facts of the particular case, the nature of the exigency which calls for the exercise of the court's discretion, the consequences of a grant of the writ, and the nature and extent of the wrong or injury which would result from its refusal. The writ will not ordinarily be issued on mere technical grounds, and it may be granted or refused, depending on whether or not it promotes substantial justice. The writ may not properly issue to accomplish or promote a wrong or further an injustice.

The effect of the issuance of the writ of mandamus in the instant case is to compel the board of equalization to do an unlawful act. A writ of mandamus cannot be properly used to accomplish any such purpose. It would be anomalous indeed that a court should be required to issue a writ of mandamus to compel action which the court would be required to subsequently enjoin at the suit of an injured party.

"While the courts, in the exercise of a sound discretion, will not issue the writ of mandamus, even to vin-

dicate a technical right, where more harm than good will result through its interference with municipal administration, such considerations are addressed to the trial court. Only in a clear case of abuse of discretion would the granting of a mandamus be reversed for such a cause." Moores v. State ex rel. Dunn, 71 Neb. 522, 99 N. W. 249, 115 Am. S. R. 605. See, also, State ex rel. Cox v. McIlravy, 105 Neb. 651, 181 N. W. 554.

"Before the court is warranted in granting a peremptory writ of mandamus, it must be made to appear that the relator has a clear legal right to the performance by the respondent of the duty which it is sought to enforce. Nothing essential to that right will be taken by intendment." State ex rel. Niles v. Weston, 67 Neb. 175, 93 N. W. 182. See, also, Hess v. Taylor, 142 Neb. 184, 5 N. W. 2d 346; State ex rel. Evans v. Brown, 152 Neb. 612, 41 N. W. 2d 862.

In State ex rel. Long v. Barstler, 122 Neb. 167, 240 N. W. 273, this court cited with approval the following: " 'Where the issue of a writ would disturb official action, or create disorder or confusion, it may be denied; and this is so even where the petitioner has a clear legal right for which mandamus would be an appropriate remedy.' 38 C. J. 550. See, also, Merrill on Mandamus, secs. 71, 73; Ferris on Extraordinary Legal Remedies, sec. 202."

"In order to justify the issuance of a peremptory writ of mandamus against public officers it must appear that the duty is imposed by law, that the duty exists at the time the writ is applied for, and that the duty to act is clear." Kurth v. City of Lincoln, 162 Neb. 643, 76 N. W. 2d 924. See, also, State ex rel. Herbert v. Anderson, 122 Neb. 738, 241 N. W. 545.

This court has consistently held that a writ of mandamus will not issue to compel the doing of a substantial wrong or an unlawful act. State ex rel. Green v. Cowles, 90 Neb. 839, 134 N. W. 959; State ex rel. Read v. Farmers Irrigation Dist., 116 Neb. 373, 217 N.

W. 607; State ex rel. Heil v. Jakubowski, 151 Neb. 471, 38 N. W. 2d 26; State ex rel. League of Nebraska Municipalities v. Loup River Public Power Dist., 158 Neb. 160, 62 N. W. 2d 682.

We have determined in the instant case that the transfer of the $150,000 from the general fund to the building fund is unlawful under existing statutes. The grant of the writ of mandamus in the present case has the effect of compelling the county board of equalization to recognize the transfer as lawful; to compel it to do an unlawful act. It would have the effect of imposing an excessive levy of taxes for general school purposes upon property owners in the school district. The remedy of mandamus is not available to the school district to bring about any such result.

The grant of the writ of mandamus under the circumstances shown constitutes an abuse of discretion by the trial court and requires a reversal of the judgment. The judgment of the district court is therefore reversed and the cause remanded with directions to dismiss the petition of the school district.

REVERSED AND REMANDED WITH DIRECTIONS.