STATE OF NEBRASKA EX REL. MAX W. GOETZ ET AL.,
APPELLEES, V. EDWARD E. LUNDAK, SUPERINTENDENT OF
SCHOOLS, KNOX COUNTY, NEBRASKA, APPELLEE,
SCHOOL DISTRICT NO. C-5 OF KNOX COUNTY, NEBRASKA,
ET AL., INTERVENERS-APPELLANTS.

260 N. W. 2d 589

Filed December 14, 1977.   No. 41239.

Arlinda Locklear, Richard B. Collins, A. James
Wabaunsee, Henry G. Wright, Philip M. Martin, Jr.,
of Higgins, Higgins & Huber, Robert E. Otte of

Deutsch, Jewell, Otte, Gatz, Collins & Domina, and James Burbridge of Burbridge & Burbridge, for interveners-appellants.

James T. Goetz of Goetz, Hirsh, Haar & Klimisch and Max W. Goetz, for appellees State ex rel. Goetz et al.

Frank Roubicek, for appellee Lundak.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

This is an action in mandamus commenced September 24, 1976, by the relators, landowners in Class I School District No. C-5, Knox County, Nebraska, to require the respondent, the county superintendent of Knox County, to dissolve School District No. C-5 and attach its territory to an adjoining district or districts, pursuant to the provisions of section 79-408.02, R. R. S. 1943. The portion of that statute pertinent to the action reads as follows: "When a district is reduced in size by the purchase or appropriation of land by the United States for any defense, flood control, irrigation, or war project, so that such remaining part shall . . . (2) have an assessed value that places it in the lower twelve per cent of the school districts of the same class in the county, it shall be the duty of the county superintendent to attach such remainder to an adjoining district or districts." The respondent resisted the demand for the writ. School District No. C-5 (which we will hereafter refer to as the Santee District), Bloomfield School District No. 86-R, and School District of Niobrara were allowed to intervene and file answers which resisted the demand for the writ. The latter two districts adjoined the Santee District. The District Court, after trial, granted the peremptory writ of mandamus. The interveners have appealed. They have filed a super-

sedeas bond and the operation of the writ has been suspended.

The resolution of the assignments of error made by the interveners-appellants require us to consider only three issues, to wit, (1) the effect of the statute, (2) the legal sufficiency of the evidence to sustain the District Court's action in granting the writ, and (3) whether the trial court abused sound judicial discretion in granting relief. We reverse and direct dismissal of the petition.

The evidence received by stipulation shows that in the fiscal year 1954-55 there were 136 Class I school districts in Knox County. In that year the assessed valuation of the Santee District was $122,525 and it ranked 99th among those districts in assessed valuation. During the years 1955 and 1956 the United States, by multiple purchases and the exercise of the power of eminent domain, acquired in the Santee District, 2,833 ares of land for flood control and irrigation purposes in connection with the Gavins Point Dam Project. The exact dates of the various acquisitions are not shown in the record except to the extent that the last eminent domain proceeding was filed on September 6, 1956. Neither the assessed nor the actual value of the 2,833 acres acquired by the United States is shown anywhere in the record. In fiscal year 1955-56, the number of Class I school districts in Knox County was reduced by 1 so that the total was 135. In that year Santee District's valuation was $120,995 and it ranked 100th in assessed valuation. In fiscal 1956-57 the number of Class I districts was reduced to 129, Santee District had an assessed valuation that year of $80,155, and its rank was 113th. In fiscal 1957-58 the number of Class I districts was reduced to 128, Santee District's assessed valuation that year was $73,390, and its rank was 112th. In fiscal 1958-59 the total number of Class I districts had been reduced to 113 and, although Santee District's valuation for that year in-

creased to $84,665, its numerical rank in assessed valuation lowered to 103rd. It is evident that for the fiscal year 1958-59, Santee District was in the lower 11 districts in assessed valuation and for the first time it entered the group of Class I districts which were in the lower 12 percent in valuation rank.

No steps were taken by anyone to cause Santee District's territory to be attached to other districts until the relators made demand upon the county superintendent shortly before this action was commenced in 1976. From 1959 onward the number of Class I districts was reduced more or less regularly until in the fiscal year 1970-71 the number was 7 and finally in fiscal year 1976-77 Santee District was the only Class I district in the county.

The position of the intervener districts is that in order for the pertinent provisions of section 79-408.02, R. R. S. 1943, to be applicable, the acquisitions by the federal government for irrigation and flood control purposes must be the cause or reason why the district reaches the place where its assessed valuation is "in the lower twelve per cent of the school districts of the same class in the county." § 79-408.02, R. R. S. 1943. The interveners further assert that the evidence does not establish that the federal acquisitions were the cause of Santee District's rank in the lower 12 percent. The relators, on the other hand, assert that it is a reasonable inference from the evidence that the acquisitions were the cause of Santee District's rank in the lower 12 percent and this court cannot, under the rules applicable to our review of the District Court action, overturn its findings of fact.

We have held that an action in mandamus is a law action in which a jury trial on issues of fact is not demandable as a matter of right and that the finding of the court will not be disturbed by this court unless clearly wrong. State ex rel. Rittenhouse v. New-

man, 189 Neb. 657, 204 N. W. 2d 372; §§ 25-2164, 25-2165, R. R. S. 1943.

The Legislature has made many and varied provisions for the elimination, merger, and consolidation of school districts. Some of the methods involve voluntary action by school electors and school boards. Other statutory provisions, of which section 79-408.02, R. R. S. 1943, is an example, direct attachment of the territory of a district to another district or districts if certain conditions exist. In these latter cases the county superintendent is given a mandatory duty and he acts summarily. School Dist. No. 23 v. School Dist. No. 11, 181 Neb. 305, 148 N. W. 2d 301. It is clear from the wording of section 79-408.02, R. R. S. 1943, that the duty which it imposes on the county superintendent is mandatory and not discretionary. Under those circumstances the remedy of mandamus is an available remedy where the responsible officer has refused to carry out his statutory obligation. State ex rel. Krieger v. Board of Supervisors, 171 Neb. 117, 105 N. W. 2d 721. In that case we said: "To warrant the issue of mandamus against an officer to compel him to act, (1) the duty must be imposed upon him by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty to act must be clear."

An examination of section 79-408.02, R. R. S. 1943, and the various other similar statutes indicates that they were designed and enacted to apply to some particular existing circumstances which might, in all likelihood, occur only once. This is most clear from an examination of section 79-408.02, R. R. S. 1943. Disregarding the conditions not applicable here, that statute applies where the federal government acquires land in the district for irrigation or flood control purposes and the acquisition results in the reduction in the size of the district so that the district's valuation is in "the lower twelve per cent of the school districts of the same class." The stat-

ute's special and limited applications could not, e. g., apply in any of the following circumstances: (1) Where there are eight or fewer districts of the class in the county, for in that case it is mathematically impossible for any district to be in the lower 12 percent for the reason that one district is more than 12 percent of the whole number of districts. (2) A fortiori, it could have no application where there is only one district in the class because since it is the only district it could not be in the lower 12 percent or any other fractional part of the total number of districts. (3) It could not apply in the extremely unlikely circumstances that several districts of the class were all proportionally affected by the federal acquisition. Further, the percentage of 12 percent is itself apparently a figure chosen to apply to a particular situation or situations where the consequence of choosing that particular figure was already known.

In an action in mandamus the relator has the burden of proof and must show clearly and conclusively that he is entitled to the particular thing he asks and that the respondent is legally obligated to act. State ex rel. Schoonover v. Crabill, 136 Neb. 819, 287 N. W. 669; State ex rel. Gillilan v. Home Street Ry. Co., 43 Neb. 830, 62 N. W. 225.

We now examine the evidence to determine whether the relators have proven their case within the meaning of the statute. The relators argue that although the evidence shows that Santee District did not reach the lower 12 percent category until fiscal year 1958-59, nonetheless it is to be assumed that this was the consequence merely of the failure of the results of the federal acquisition to show up in the tax rolls for a period of time. However, there is nothing at all in the record to indicate that.

As the recital of evidence given earlier in this opinion indicates, it was not until fiscal 1958-59 that the Santee District valuation placed it in the lower 12 percent of assessed valuation of the Class I districts.

The record does show that in the interim there were other occurrences which could have caused that particular placement. It is evident that if, subsequent to the acquisition, all other districts of the same class having valuations lower than Santee District were eliminated, the Santee District would then be in the lower 12 percent. But without evidence as to how the federal acquisition affected the valuation of the district, it is impossible to determine whether the result was caused by the reduction in size and consequent reduction in value, or whether it was caused by both the acquisition and the elimination of other districts, or whether it occurred only by the reason of the elimination of other districts. Between fiscal years 1955-56 and 1956-57, seven Class I school districts were eliminated in Knox County. Between fiscal 1956-57 and fiscal 1957-58, one Class I district was eliminated. Of the eight districts eliminated, the last assessed valuations of four were lower than the Santee District and the other four had higher valuations. Thus Santee District's relative placement in the valuation hierarchy was unaffected by the elimination of the districts. However, for fiscal 1957-58 it still did not rank in the lower 12 percent. It is not possible to determine from the evidence when the 2,833 acres acquired by the United States were removed from the tax rolls. It is therefore impossible to determine from the evidence whether the acquisitions resulted in the Santee District's placement, or whether it was the consequence entirely of the later reduction in the number of Class I districts. In this case the matter to be proved, that is, the effect of the acquisition of the 2,833 acres, was susceptible of exact proof. The land taken could be identified from public records, its assessed valuation could be shown from public records, and the time when the title passed to the federal government could be shown from the public records. Neither the deeds to the United States, nor the complete eminent

domain proceedings were included in the proof presented. When the United States acquires title through the exercise of the power of eminent domain, title normally passes when judgment is entered. However, it will pass before judgment if a declaration of taking is filed and the necessary deposit of security made. Title 40 U. S. C. A., § 258a. None of this appears in the record.

The writ of mandamus is not a writ of right. Before a court is warranted in granting a peremptory writ, it must appear that the relator has a clear legal right to the performance of the duty by the respondent. State ex rel. School Dist. v. Board of Equalization, 166 Neb. 785, 90 N. W. 2d 421.

We hold that in order for the provisions of section 79-408.02, R. R. S. 1943, to be applicable, the acquisition by the United States for the purposes named in the statute must have been the cause, or a substantial part of the cause, of the existence of the conditions described in the statute under which the county superintendent is directed to attach the territory of the school district affected to an adjoining district or districts. The relators in this case did not clearly sustain their burden of proof and the finding of the District Court was clearly wrong.

There exists another ground upon which we also place our holding. Both sides introduced evidence not directly related to proof of the cause or existence of the condition which formed the basis upon which the writ was asked, but which apparently related to the "equities" of the situation as they existed in 1976 when this action was commenced, 20 years after the acquisition of the lands by the United States.

The relators introduced evidence to show that in 1976 the assessed valuation in the Santee District was $307,013 and that the combined school district levy and the free high school levy was 157.79 mills. The school district levy was 19.55 mills and the free high school levy was 138.24 mills. In 1970 the Santee

school levy was 2.45 mills and the free high school levy was 23.84 mills. It is clear that the reason for the multifold increase in the free high school levy during that 7-year period was the reduction in the number of class districts from seven to one. The relators admit that the burden of the extremely large free high school levy is not determinative, but should be considered.

The undisputed record shows that 94 percent of the Santee District student population is American Indian; that in 1976 Santee District was educating 105 children in grades K through 8; that the school is fully accredited and is housed in a $2,200,000 school building, construction of which began in 1974 and which was opened for school in February 1976; that it was built entirely with federal funds and that Santee District has no bonded indebtedness; that because of the reservation status of the Santee District and the presence of tax exempt land in the district, 74 percent of the school operating funds of the district come from the federal government; that high school students residing in the Santee District attend Niobrara High School as tuition students, which tuition is paid from the free high school levy; that the federal government makes no payment in lieu of taxes to the free high school fund; that the Santee school building is adequate to accommodate a high school; and that the operation of a high school for that district's student population is being considered by the Santee District. We take notice of the fact that in April of 1977 the Legislature amended section 79-701, R. S. Supp., 1976, relating to the method for changing a Class I district to a Class II district which may operate a high school. That statute provides that no high school may be maintained unless the district has an enrollment of 100 pupils in grades 9 to 12. The 1977 amendment to the statute, which took effect April 27, 1977, provides that the minimum student enrollment requirement does "not apply to any

district located on an Indian reservation and substantially or totally financed by the federal government." § 79-701, R. S. Supp., 1977.

As already mentioned, the issuance of a writ of mandamus is not a matter of right. State ex rel. School Dist. v. Board of Equalization, *supra*. Although mandamus is denominated a law action, it is largely controlled by equitable principles. State ex rel. School Dist. v. Board of Equalization, *supra*. We have also said that where the issuance of the writ would disturb official action, or create disorder or confusion, it may be denied, and this is so even when the petition has a clear legal right for which mandamus would be an appropriate remedy. State ex rel. Long v. Barstler, 122 Neb. 167, 240 N. W. 273.

It seems to us that in this case where the remedy is sought 20 years after the occurrence of the conditions giving it birth and where in the meantime there has been a substantial change of conditions, and where action by the superintendent under section 79-408.02, R. R. S. 1943, would leave the status of the new school in doubt and its continued use unclear, it was a plain and clear abuse of sound judicial discretion to grant the writ.

As we have pointed out many times, the power of the Legislature in the regulation of school districts is essentially plenary. It appears in this case that the Legislature is in the best position to make determinations as to which solutions are appropriate at this time.

REVERSED WITH DIRECTIONS TO DISMISS.