William A. Walsh, J.
This is an action for judgment declaring that defendant’s authorization permitting the opening of a branch office of Mid-Hudson Savings Bank in the Town of Kent constituted a violation of section 240 of the Banking Law, and that defendant be permanently restrained and enjoined from authorizing Mid-Hudson Savings Bank from opening a branch office in the proposed locality.
By order dated October 9, 1974 (Grady, J.), defendant was enjoined and restrained, pendente lite, "from permitting the Mid-Hudson Savings Bank to open and occupy a branch office on Route 52 in the Village of Carmel, Putnam County, New York”.
Defendant filed a notice of appeal from that order and, consequently, the enforcement of the order was automatically stayed (CPLR 5519, subd [a], par 1).
The Appellate Division, Second Department, by order dated January 26, 1976, affirmed the order granting the motion for a *393 preliminary injunction. In its memorandum decision it observed: "On the record before us and subject to the developments at the trial, plaintiff has established its right to the relief sought and granted.” (51 AD2d 587.)
The application of Mid-Hudson Savings Bank to intervene in the trial of the action was granted by decision and order dated February 23, 1976 (Marbach, J.).
By application dated December 10, 1973, Mid-Hudson Savings Bank applied to defendant Superintendent of Banks for permission to open and occupy a branch office on the east side of Route 52, near the intersection of Horsepond Road and Route 52, in the Town of Kent. Objections were raised by plaintiff to the effect that the proposed branch would have a destructive competitive effect on it.
The branch office application was approved by the banking board at its meeting on March 6, 1974. On March 11, 1974, a legal opinion in opposition to the Mid-Hudson Savings Bank branch office was submitted by plaintiffs attorney to the Banking Department. The thrust of that opinion was that the establishment of a Mid-Hudson Savings Bank branch at the location indicated in its application violated section 240 (subd 2, par [b]) of the Banking Law which prohibits the opening of a savings bank branch office in any city or village with a population of 50,000 or less, and in which is located the principal office of a bank, trust company or national banking association. The term "village” as used in the statute means either an incorporated or unincorporated village (Banking Law, § 240, subd 4). It is claimed that the proposed Mid-Hudson Savings Bank branch lies within the unincorporated Village of Carmel, the location of plaintiffs home office.
The Banking Department conducted a further investigation and determined that the proposed savings bank branch was not in the same unincorporated village as plaintiffs home office, and that the application of Mid-Hudson Savings Bank had been properly granted.
The sole issue to be determined is whether the Mid-Hudson Savings Bank branch office, on Route 52 in the Town of Kent, is within the unincorporated Village of Carmel, where plaintiffs home office is located, in violation of section 240 of the Banking Law.
In the absence of a statutory definition, the word "village” has been given a common rather than a technical meaning. It has been defined as "merely an assemblage or community of *394 people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group.” (Wyandotte Sav. Bank v State Banking Comr., 347 Mich 33, 41.) In Union Sav. Bank of Patchogue v Saxon (335 F2d 718), the United States Court of Appeals for the District of Columbia adopted that definition of a village in construing its meaning under the Banking Law of this State. Therein it was determined that inasmuch as the Banking Law did not define "village”, the word must be given its natural meaning.
In section 54 of the General Construction Law, a village is defined to mean an incorporated village. The General Construction Law specifically applies to every statute unless a contrary intention is indicated. (General Construction Law, § 110.) Thus, "village” does have a specific meaning in the Banking Law. Subdivision 4 of section 240 of the Banking Law, however, corrupts that meaning by providing that "village” as used therein means an incorporated or unincorporated village.
In construing the term "unincorporated village”, we deem it to mean a combination of the minimum requirements necessary for incorporation as a village plus other appropriate attributes of communal life. Surely, if only incorporation standards were required, the statute would have explicitly so provided. Its failure so to do indicates that more than mere incorporability was intended. Consequently, it would seem reasonable to require, in addition, appropriate evidence of a cohesive community containing contiguous clusterings of population and business enterprises.
Section 2-200 of the Village Law provides that a territory of at least 500 regular inhabitants may be incorporated as a village provided the territory does not contain more than five square miles; or is coterminous with the entire boundaries of school, fire, fire protection, fire alarm; town special or town improvement district; or coterminous with parts of the boundaries of more than one school, fire, fire protection, fire alarm, town special or town improvement district all of which are contained within those limits or one town; or is coterminous with the entire boundaries of a town.
The contention that legislative intent requires that an unincorporated village be determined by the boundaries established by the United States Bureau of the Census is meritless. Section 37-b of the General Construction Law provides that "population” means the population as shown by the latest *395 Federal or State census, unless otherwise provided. Subdivision 21 of section 2 of the Banking Law declares that population means population as determined by the latest Federal census except when used in connection with the term "unincorporated village.” In such case, population must be determined by the Superintendent of Banks from the best available sources of information. If expressed legislative intent in matters relating to the population of an unincorporated village does not make Federal census figures controlling, it can hardly be said that legislative intent requires that unincorporated place boundaries as fixed by that agency are controlling in defining the limits of an unincorporated village.
The Bureau of Census term "unincorporated place” is defined by a witness as "a densely settled population center, without legal limits or corporate powers, and with a locally recognized name.” The unincorporated place of Carmel is made up of three enumeration districts with a population of more than 3,300 persons. The Mid-Hudson Savings Bank is located within one of those enumeration districts. It is conceded that an enumeration district is drawn in such a way as to permit an enumerator to canvass the district in a period of two weeks. Thus, since enumeration districts and unincorporated places are created solely for the purpose of efficiently counting people, it lacks probative value as evidence of the boundaries of an unincorporated village under section 240 of the Banking Law.
The testimony offered by plaintiff that Carmel postal district boundaries constitute evidence of unincorporated village boundaries is unpersuasive. That postal district also extends over a wide area into Mahopac and Croton Falls and runs from the southern terminus of Putnam County to the county north line and has a population of 38,000 people.
The same obtains with respect to the Carmel telephone company district which includes several towns. Indeed, there are telephone exchanges which cross city, county and even State lines.
Postal and telephone district boundaries spill over into areas beyond any reasonable boundaries which may be established for the unincorporated Village of Carmel.
The expert witnesses called by plaintiff were an economist, a geographer and a planner.
According to the economist, a village or community must include social and public amenities. There must be people *396 together with business and service institutions to serve them. The concentration of population and business places comprise the unincorporated Village of Carmel, which he defined as the three enumeration districts established by the Bureau of Census as the unincorporated place of Carmel.
The geographer believed that the view of the people who are part of the community is important in fixing unincorporated Village of Carmel boundaries. The planner thought of a village in terms of an assembly of people, goods and services.
Defendant and intervenor contend that evidentiary factors which must be considered in determining unincorporated village boundaries include water, fire, school, library and park district lines. Such factors have been referred to as "official” documentary proof or evidence (Matter of Long Is. Nat. Bank v Superintendent of Banks, 56 Misc 2d 979).
The testimony here has shown that the site of the savings bank branch is not within the Carmel sewer, water or fire districts. It is within the Carmel school district, but that district encompasses a vast area including all of the Town of Kent and parts of the Towns of Carmel, Patterson and Southeast and crosses into Dutchess County. Also, the savings bank branch would not pay taxes to Carmel.
Plaintiff’s home office is located on Route 52 opposite the county courthouse and close to Lake Gleneida. Proceeding north, a business section is encountered with retail stores, a savings and loan association branch and other establishments. Then, a residential area appears interspersed with business offices. As one travels north out of the hub of Carmel, the area becomes countrified. A telephone company building and a gasoline station give way to a cemetery. Across the street, the Putnam County Humane Society sign introduces a wide expanse of undeveloped farm acreage. The road continues north across sparsely settled terrain leading to the Town of Kent and a small shopping plaza which is the site of the proposed branch of the Mid-Hudson Savings Bank.
Plaintiff has the burden of showing that the intervenor Mid-Hudson Savings Bank branch in the Town of Kent is within the unincorporated Village of Carmel. This it has failed to do.
The court has defined an unincorporated village as an entity which meets the minimum requirements for village incorporation and, in addition, contains a continuity of population and business enterprises which flesh out the bones of a community. Pockets of residential clusters and business enterprises *397 separated by sparsely settled areas may define a condition euphemistically referred to as "urban sprawl” but may not satisfy the criteria for an unincorporated village.
The court fixes Raymond Hill Cemetery as the northern boundary of the unincorporated Village of Carmel. It is as though, by the use of that landmark, the community has determined that the burial place symbolically and realistically marks the terminus of natural and community life.
Plaintiff has failed to offer sufficient proof to demonstrate that its concept of the unincorporated Village of Carmel meets the minimum requirements for incorporation under section 2-200 of the Village Law, and, in addition, that the Mid-Hudson Savings Bank branch is part of that community by applicable relevant standards.
In Matter of Long Is. Nat. Bank v Superintendent of Banks (56 Misc 2d 979, supra) the court regarded official documentary proof as persuasive in determining whether a particular site is includable within an unincorporated area. Such official evidence, it held, relates to school, fire, park and library district boundaries. The fact that the proceeding was one pursuant to CPLR article 78 does not distinguish it from this action. Although here the prayer is for declaratory relief, the result sought is to overrule and declare void the determination of a public official, relief obtainable in a CPLR article 78 proceeding.
Judgment is granted declaring the authorization of defendant Superintendent of Banks permitting intervenor Mid-Hudson Savings Bank to open and occupy a branch office on Route 52 in the Town of Kent is not in violation of section 240 of the Banking Law inasmuch as the proposed savings bank branch does not lie within the unincorporated Village of Carmel.
The preliminary injunction contained in the order dated October 9, 1974, is vacated.