527 N.W.2d 615 (1995)
247 Neb. 384
STATE of Nebraska ex rel. Arthur J. SCHERER and Sharrel M. Scherer and for all Other Persons Similarly Situated, Appellants,
v.
MADISON COUNTY COMMISSIONERS OF MADISON COUNTY, Nebraska, et al., Appellees.
No. S-93-129.
Supreme Court of Nebraska.
February 10, 1995.
*617 Lynn D. Hutton, Jr. of Hutton, Freese & Einspahr, P.C., Norfolk, for appellants.
Joseph M. Smith, Madison County Atty., for appellees.
HASTINGS, C.J., and WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.
LANPHIER, Justice.
The relators prayed in the district court for Madison County for an alternative or preemptory writ of mandamus against the Madison County Board of County Commissioners. The relators sought to require the respondents to expend Madison County tax funds for the improvement and maintenance of public roads in the sanitary and improvement district (S.I.D. No. 3) in which the relators reside. The county had maintained the roads in the past, but stopped in 1992, claiming that it was the duty of S.I.D. No. 3 to so maintain these roads. The district court denied the writ, and the relators appealed to the Nebraska Court of Appeals. The Court of Appeals concluded that Madison County did not have a legal duty to maintain the roads in S.I.D. No. 3 and affirmed the judgment of the district court. See State ex rel. Scherer v. Madison Cty. Comrs., 94 NCA No. 27, case No. A-93-129, 1994 WL 380300 (1994) (not designated for permanent publication). We agree that Madison County did not have a legal duty to maintain the roads within S.I.D. No. 3 and, therefore, affirm.

BACKGROUND
The relators live in and own a residence situated in S.I.D. No. 3 in Madison County. They live on a platted street in the Eastern Heights First Addition called Jo Deb Drive.
The Eastern Heights First Addition was surveyed and platted in 1967. On August 7, 1967, John, Letitia, and Adelia Maurer, who apparently then owned the land, dedicated Jo Deb Drive and the other streets in the plat to the use and benefit of the public. S.I.D. No. 3's articles of incorporation were filed on July 11, 1968. S.I.D. No. 3 was organized under Neb.Rev.Stat. §§ 31-727 to 31-762 (Reissue 1968). S.I.D. No. 3 has never received title to any public streets in the Eastern Heights First Addition.
Madison County controlled, maintained, and repaired Jo Deb Drive and the other streets in S.I.D. No. 3 until June 16, 1992. Madison County also listed the roads in S.I.D. No. 3 on its inventory for obtaining money allocated to the county road-bridge fund. On June 16, the county commissioners passed a resolution providing that the county immediately discontinue all road maintenance services and snow removal in S.I.D. No. 3 and other sanitary and improvement districts in the county.

*618 ASSIGNMENTS OF ERROR
In their petition for further review, the appellants-relators assign five errors, which all raise the same issue: whether Madison County has a ministerial duty to maintain the roads in S.I.D. No. 3 such that a court may compel the county to fulfill its duty by means of a writ of mandamus.

STANDARD OF REVIEW
Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. State ex rel. Wieland v. Beermann, 246 Neb. 808, 523 N.W.2d 518 (1994).

ANALYSIS
In an action in mandamus, the relator has the burden of proof and must show clearly and conclusively that he is entitled to the particular thing he asks and that the respondent is legally obligated to act. State ex rel. Goetz v. Lundak, 199 Neb. 585, 260 N.W.2d 589 (1977). Thus, in order to prevail, the relators must establish that Madison County has a ministerial duty to maintain the subject roads within S.I.D. No. 3.
A county has only those powers and duties conferred upon it by the Legislature. Rock Cty. v. Spire, 235 Neb. 434, 455 N.W.2d 763 (1990). Madison County, therefore, only has a duty to maintain the roads within S.I.D. No. 3 if there is a statutory duty. Numerous sections in various chapters of our statutes are related to the issue of public roads and the maintenance thereof. However, there is no coherent statutory scheme.
In construing these various sections, we will endeavor, as we must, to give each section its intended effect as shown by the statutory language. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. In re Application of Jantzen, 245 Neb. 81, 511 N.W.2d 504 (1994). Statutes relating to the same subject matter are in pari materia, and a court will construe them together so as to determine the intent of the Legislature and to maintain a consistent and sensible scheme. State on Behalf of J.R. v. Mendoza, 240 Neb. 149, 481 N.W.2d 165 (1992).

§ 39-1402
Relators rely on Neb.Rev.Stat. § 39-1402 (Reissue 1993) to establish Madison County's duty. Section 39-1402 provides:
General supervision and control of the public roads of each county is vested in the county board. The board shall have the power and authority of establishment, improvement, maintenance and abandonment of public roads of the county and of enforcement of the laws in relation thereto as provided by the provisions of Chapter 39, articles 14 to 20, except sections 39-1520.01 and 39-1908.
In SID No. 1 v. County of Adams, 209 Neb. 108, 306 N.W.2d 584 (1981), we addressed this statute and whether under its provisions a county could be compelled to maintain roads created and owned by a sanitary and improvement district. We determined that § 39-1402 was a statute of general application. However, we also determined that chapter 31, article 7, of the Nebraska Revised Statutes, which covers the entire subject of sanitary and improvement districts within the state, was a specific act. The specific act, which in part conveyed to sanitary and improvement districts the authority and power to construct and maintain roads, among other powers, created an exception to the general legislation. The exception, we held, removed from the county the obligation of maintaining the roads.
Relator argues that SID No. 1 is inapplicable, since the roads in the case at hand were not built or owned by S.I.D. No. 3. The veracity of relator's assertion cannot be verified based upon the evidence before us. *619 However, because we conclude that construction and ownership of the roads is of no consequence, we deem that SID No. 1 is dispositive.
Section 39-1402 outlines a county's authority over the "public roads of each county." Neb.Rev.Stat. § 31-740 (Reissue 1993) provides, in pertinent part, the following with respect to a sanitary and improvement district: "The board of trustees or the administrator of any district organized under sections 31-727 to 31-762 shall have power to provide ... for establishing, maintaining, and constructing sidewalks, public roads, streets, and highways...."
"Public roads" are defined in Neb. Rev.Stat. § 39-1401 (Reissue 1993) as "all roads within this state which have been laid out in pursuance of any law of this state, and which have not been vacated in pursuance of law, and all roads located and opened by the county board of any county and traveled for more than ten years." Under this definition of "public roads," neither the obligations of a sanitary and improvement district nor those of a county depend upon construction or ownership. Since the respective entities' statutory obligations are not dependent upon construction or ownership of the roads, the relationship between the statutes is unchanged. SID No. 1 is therefore dispositive. Accordingly, § 39-1402 is insufficient under these circumstances to impose a ministerial duty upon the respondents.
The Court of Appeals noted that other sections within chapter 39 concern a county's authority and obligations over certain classification of roads: Neb.Rev.Stat. §§ 39-1405(1) and (2), 39-1501(5), and 39-2001 to 39-2003 (Reissue 1993). Because a county's ministerial duty may arise from these statutes, each will be discussed seriatim.

§ 39-1405(1)
Section 39-1405(1) provides: "All public streets of unincorporated villages are a part of the public roads and shall be worked and maintained by the respective county or township authorities."
This section was not discussed in SID No. 1. Section 39-1405(1) requires counties to maintain the public roads within unincorporated villages. Thus, at issue is whether a sanitary and improvement district constitutes an unincorporated village. The phrase "unincorporated village" is not defined in our statutes or in any Nebraska cases. The phrase appears to have been used only very seldom in the law.
The phrase has been defined by the courts of Michigan and New York in the context of banking law. Wyandotte Bank v. Banking Comr., 347 Mich. 33, 78 N.W.2d 612 (1956); Putnam County Nat. Bank of Carmel v. Albright, 87 Misc.2d 391, 384 N.Y.S.2d 669 (1976). The definitions used in those cases are domain specific and so not applicable under these circumstances. The Wisconsin Supreme Court has defined the term in a broader context. In Handlos v. State Line, 233 Wis. 145, 288 N.W. 748 (1939), it concluded that a community fulfilling the requirements for incorporation as a village, but which had not been incorporated, was an unincorporated village.
Under Nebraska law, a village is one of the two types of political subdivisions of the smallest size. See Neb.Rev.Stat. § 17-306 (Reissue 1991). Additionally, a sanitary and improvement district, being a "body corporate and politic," cannot be considered unincorporated. Neb.Rev.Stat. § 31-732 (Reissue 1993). Considering the meaning of "village" in Nebraska law and given the ordinary meaning of "unincorporated," we find the legislative intent of an "unincorporated village" in § 39-1405(1) to be that described by the Wisconsin Supreme Court in Handlos. Finally, the next paragraph of § 39-1405 addresses a county's authority to remove snow and ice in sanitary and improvement districts. It thus appears that the Legislature intended an unincorporated village to be an entity entirely different from a sanitary and improvement district. For all these reasons, we conclude that S.I.D. No. 3 is not an unincorporated village for the purposes of § 39-1405(1).

§ 39-1405(2)
Next, we consider § 39-1405(2). It provides:
The county board ... may, after the clearance of snow and ice from the county road *620 system, clear snow and ice from all public streets of incorporated sanitary and improvement districts in the same manner as if such streets were part of the county road system.
Any county board performing such snow and ice clearance in a sanitary and improvement district shall not be held liable for any damages arising from such snow and ice clearance, unless damages arise as a result of gross negligence.
(Emphasis supplied.)
The operative word of the statute is "may." Generally, the word "may" when used in a statute will be given its ordinary meaning unless the meaning would manifestly defeat the object of the statute, and when used in a statute, it is permissive and discretionary, not mandatory. Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N.W.2d 119 (1957). The use of the word "may" in this statute would not defeat the object of the statute, but on the contrary seems to effectuate the main purpose of the statute. "May" as used in § 39-1405(2) is permissive and discretionary, not mandatory. Section 39-1405(2) merely permits, but does not obligate, the county to act. Because of its permissive nature, this statute does not create a ministerial duty for the purposes of obtaining a writ of mandamus.

§ 39-1501(5)
Section 39-1501 provides in pertinent part:
The county board, in commissioner type counties having a county highway superintendent and in township type counties having adopted a county road unit system as provided in sections 39-1513 to 39-1518, shall:
. . . .
(5) Maintain roads in unincorporated areas if such roads are dedicated to the public and are first improved to minimum standards as established by the county board. In a zoning area of a municipality such standards shall be the higher of those established either by the county or the municipality. Further improvements may be undertaken pursuant to the provisions of Chapter 39, article 16.
We are unable to deduce from the evidence contained in the record whether this statute is applicable in this case. By its own terms, this statute applies to commissioner-type counties which have a county highway superintendent. Although Madison County is a commissioner-type county, the record makes no mention of the existence of a county highway superintendent. Assuming, without now deciding, that this section creates an obligation on the part of Madison County, the relators would still be denied a writ of mandamus in this case because they failed to meet their burden of proving clearly and convincingly that respondents are legally obligated to act. See State ex rel. Goetz v. Lundak, 199 Neb. 585, 260 N.W.2d 589 (1977).

§§ 39-2001 to 39-2003
Finally, §§ 39-2001 to 39-2003 provide that county roads "designated" as "primary" shall be maintained at the expense of the county. However, there is no evidence in the record regarding whether the roads in question have been designated as "primary" pursuant to §§ 39-2001 to 39-2002. With respect to these sections, the relators have thus failed to meet their burden of proving clearly and convincingly that respondents are legally obligated to act. See State ex rel. Goetz v. Lundak, supra.

CONCLUSION
In light of the foregoing, the Court of Appeals correctly determined that there is no statutory basis for requiring Madison County to maintain the roads that the relators seek to require it to maintain. The judgment of the Court of Appeals, therefore, is affirmed.
AFFIRMED.