**COMMUNITY BANK OF SULLIVAN COUNTY, Plaintiff,**

v.

**The FIRST NATIONAL BANK OF JEFFERSONVILLE and John D. Hawke, Jr. in his official capacity as Comptroller of the Currency, Defendants.**

No. 99 Civ 1093 BDP.

United States District Court,
S.D. New York.

Dec. 12, 2000.

Kevin S. Cooman, Peter J. Weishaar, McConville, Considine, Cooman & Morin P.C., Rochester, NY, for plaintiff.

David M. Schraver, Nixon Peabody, Clinton Square, Rochester, NY, for defendant Bank of Jeffersonville.

Larry J. Stein, Office of the Comptroller of the Currency, Washington, D.C., for Comptroller of the Currency.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Community Bank of Sullivan County ("Community Bank") challenges the approval by the Comptroller of the Currency (the "OCC") of an application by the First National Bank of Jeffersonville ("Jeffersonville Bank") to open a branch office near Community Bank's home office.

Jeffersonville Bank is a federally chartered banking association located in Jeffersonville, Sullivan County, New York. Jeffersonville Bank is barred by the National Banking Act from establishing a branch in any New York location where it would be prohibited from doing so if were a New York State chartered bank. 12 U.S.C. § 36(c). Community Bank is a New York State chartered banking institution located in the Town of Thompson, Sullivan County, New York. Community Bank's home office is located in an unincorporated area of Thompson, generally known as Kiamesha. Jeffersonville Bank seeks to locate its new branch there. Under New York's "Home Office Rule," a New York State banking institution is barred from establishing a branch within an unincorporated village with a population of 50,000 or less if that unincorporated village contains the home office of another New York bank. The critical factual issue in this case is whether the Kiamesha region was merely an unincorporated area or was sufficiently concentrated to be an unincorporated village. Were Kiamesha an unincorporated village, Community Bank would be entitled to

home office protection and Jeffersonville Bank could not open the branch. The New York State Banking Division ("NYSBD") concluded that the Kiamesha was an unincorporated village; the OCC determined that it was not, and approved the Jeffersonville Bank's application in September 1999. This litigation ensued.

## FACTS

In late 1998, Wal–Mart began construction of a store on Anawana Lake Road in Thompson and sent bid solicitations to financial institutions, including Jeffersonville Bank and Community Bank, seeking a full service bank to operate an in-store branch at that location. The next year, in February 1999, Jeffersonville Bank submitted its bid to open a branch at Wal–Mart, as did Community Bank, and Wal–Mart accepted Jeffersonville Bank's bid. Community Bank's home office is located in a strip mall east of Route 42 North. Community Bank's home office and the Wal–Mart store are approximately one-half mile apart.

Anticipating a new Jeffersonville Bank branch at Wal–Mart, Community Bank wrote the NYSBD that it wished to assert its home office protection to prevent Jeffersonville Bank from opening the branch. In March 1999, Jeffersonville Bank submitted its application to the OCC and that same month the OCC provided a copy of Jeffersonville Bank's branch application to the NYSBD and requested comments. In April 1999, the NYSBD provided an Opinion Letter to the OCC in which the NYSBD concluded that Community Bank's home office was in an unincorporated village and, consequently, was entitled to home office protection.

In connection with its administrative review of Jeffersonville Bank's application and Community Bank's challenge, the OCC considered the information supplied by the NYSBD and Jeffersonville Bank. The OCC also reviewed aerial maps, property descriptions and other information

concerning physical characteristics of the area. The administrative record also indicates that the OCC considered data on the assets, branches and financial soundness of Jeffersonville Bank, and, in addition, OCC officials conferred internally on the application.

In June 1999, Nina Lipscomb, an Analyst Specialist at the OCC, forwarded to Michael G. Tiscia, the OCC Licensing Manager responsible for Jeffersonville, a confidential memorandum summarizing Jeffersonville Bank's application and analyzing the relevant factual issues. She concluded that the Jeffersonville Bank's branch application should be approved. Notably, she concluded that a New York court had found an area with physical characteristics identical to those of Kiamesha was not an unincorporated village under New York law. On June 23, 1999, Mr. Tiscia officially concurred with Ms. Lipscomb's recommendation.

Jeffersonville Bank's application was the subject of further analysis at OCC. The next month Laurie Sears, OCC's Senior Attorney for the Bank Activities & Structure Division, disseminated another memorandum further analyzing the issues presented by Jeffersonville Bank's application, reaching the same conclusion as had Ms. Lipscomb. Further, Ms. Sears analyzed the NYSBD's April 20, 1999 Opinion Letter and concluded that it was inconsistent with the prior opinion of the NYSBD and that the OCC was not bound to follow the opinions of state regulatory authorities. Following further internal review and discussions at the OCC, on July 27, 1999, it issued a formal decision approving Jeffersonville Bank's branch application.

Although Community Bank did not directly participate in administrative proceedings at the OCC, after Jeffersonville Bank's branch application was approved, Community Bank lodged sharp objections to the OCC's determination and, in August 1999, requested documentation concerning the OCC's deliberation and that final approval of the branch be postponed on the ground that the OCC lacked authority to make the factual findings it made. Following discussions with Community Bank representatives, the OCC in September 1999, rejected Community Bank's challenges and declined to revoke its July 27 approval of Jeffersonville Bank's application. In September 1999, the OCC officially authorized Jeffersonville's Bank branch and it opened on September 30, 1999.

Community Bank then commenced this action against Jeffersonville Bank and the OCC alleging that the location of the branch violated New York Banking Law § 105(1) and sought declaratory and injunctive relief, and compensatory damages against Jeffersonville Bank. The parties have cross moved for summary judgment. The relevant facts are not in dispute, but the parties sharply contest whether the OCC's approval of the branch violated federal law.

## DISCUSSION

The National Bank Act prohibits the establishment and operation of branches of federally-chartered banks in any New York location where that establishment or operation would not be permitted to a New York-chartered banking institution. 12 U.S.C. § 36(c). Section 36 of the National Bank Act provides in part:

> A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, *if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question;* and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question ... *and subject to the restrictions as to location imposed by the law of the State on State banks.*

12 U.S.C.A. § 36(c) (West Supp.1999) (emphasis added).

■ Under this statute, the Comptroller may permit the establishment of a national bank branch only if New York State law would permit a New York State-chartered bank to open a branch in the same location. *See Union Sav. Bank of Patchogue v. Saxon,* 335 F.2d 718, 720 (D.C.Cir.1964) (noting that the establishment of a national bank branch is only permitted "if the statutory law of the particular state would permit a state bank to branch at the same location").

The "home office protection" rule prohibits New York-chartered banking institutions from establishing a branch bank within a "village" with a population of 50,000 or less in which the home office of another bank, trust company, or national banking association is already located. N.Y. Banking Law § 105(1)(a) (McKinney Supp.1999). As used in New York Banking law § 105(1)(a), the term "village" means "either an incorporated or an unincorporated village." N.Y. Banking Law § 105(4) (McKinney Supp.1990).

As previously noted, the OCC determined that the area called Kiamesha surrounding Community Bank's home office and the Wal–Mart Branch was not an "unincorporated village" under N.Y. Banking Law § 105(4). Following on this factual determination, the OCC approved Jeffersonville Bank's application.

■ Community Bank seeks judicial review of the OCC's decision under the APA, which provides that a "person adversely affected or aggrieved by agency action ... is entitled to judicial review thereof." 5 U.S.C. § 702. In addition, Community Bank seeks declaratory relief concerning the proper application of state and federal law to Jeffersonville Bank's branch application. *See* 28 U.S.C. § 2201(a).[1]

■ The OCC's decision approving Jeffersonville Bank's application is reviewed under 5 U.S.C. § 706(2)(A), which provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall— (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Community Bank invites this Court to review *de novo* the OCC's determination. This Court declines that invitation since it is well established that that standard is not an appropriate one. In *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) the Supreme Court identified the appropriate standard as "whether the Comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" as specified in 5 U.S.C. § 706(2)(A). In *Hempstead Bank v. Smith,* 540 F.2d 57, 60 (2d Cir.1976), our Court of Appeals held that a review of OCC bank branch decisions under 12 U.S.C. § 36(c) "is limited to the question of whether the decision was arbitrary, capricious or not in accordance with law in light of administrative record". Specifically, the Court there admonished that the OCC's determinations may not

---

1. "[T]he operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Community Bank's claim under the Declaratory Judgment Act provides only a form of action through which it may obtain judicial review available under the APA. *See* 5 U.S.C. § 703 ("The form of proceeding for judicial review is ... any applicable form of legal action, including actions for declaratory judgments."). Consequently, in determining whether Community Bank is entitled to declaratory relief, the Court applies the same standard of review applicable to claims under the APA.

"be questioned in a *de novo* hearing in the District Court." *Id. Accord Bank of the North Shore v. FDIC,* 743 F.2d 1178, 1184 (7th Cir.1984).

*De novo* review would not be appropriate because this Court's review of the administrative record reflects, and, indeed as all the parties submissions make clear, the determination that Kiamesha was not an unincorporated village was a fact-laden inquiry turning on the physical features of the area, the nature and intensity of land-use regulation, the character and evolution of commercial and residential housing in the area, and whether the area was characterized by community cohesion or urban sprawl—in other words, whether Kiamesha presents "attributes of community life." *See Putnam County Natal Bank of Carmel v. Albright,* 87 Misc.2d 391, 384 N.Y.S.2d 669 (N.Y.Supp.1976).

■ Moreover, substantial weight of federal authority supports the proposition that the review of OCC's determinations, such as the one at issue here, is limited to the administrative record. *See James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1096 (D.C.Cir.1996); *First National Bank & Trust v. Dep't of the Treasury,* 63 F.3d 894, 897 (9th Cir.1995); *Franklin Savings Assoc. v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1137 (10th Cir.1991).

■ With these standards in mind, we turn to the administrative record. In reviewing the administrative record, this Court is mindful that the OCC's views are entitled to " 'considerable respect.' " *Independent Bankers. Assoc. v. Marine Midland Bank,* 757 F.2d 453, 461 (2d Cir.1985) (quoting *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)). Moreover, this Court is not authorized to "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Those principles are applied with particular force because the Comptroller of the Currency is charged with enforcement of the banking laws and courts "cannot come lightly to the conclusion that the Comptroller has authorized activities that violate the banking laws." *Investment Co. Institute v. Camp,* 401 U.S. 617, 626–27, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971).

■ This Court's review of the administrative record indicates that the OCC, during its evaluation process, correctly identified and understood New York Banking Law as it related to home office protection. The OCC realized that the term "unincorporated village" is not defined with particular precision under New York law, but identified and reviewed the leading precedent on the subject: *Union Savings Bank of Patchogue v. Saxon,* 335 F.2d 718 (D.C.Cir.1964); *Putnam County Nat. Bank of Carmel v. Albright,* 87 Misc.2d 391, 384 N.Y.S.2d 669 (N.Y.Sup.1976). In *Putnam,* the New York court set forth the relevant standard for determining whether an area is an unincorporated village, which was expressly cited by the OCC:

In the absence of a statutory definition, the word "village" has been given a common rather than a technical meaning. It has been defined as merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group. In *Union Savings Bank of Patchogue v. Saxon,* the United States Court of Appeals for the District of Columbia adopted that definition of a village in construing its meaning under the Banking Law of this State.... In construing the term "unincorporated village," we deem it to mean a combination of the minimum requirements necessary for incorporation as a village plus other appropriate attributes of communal life. Surely, if only incorporation standards were required, the statute would have explicitly so provided.... Consequently, it would seem reasonable to require, in addition, appropriate evidence of a cohesive community containing contiguous clusterings of population and business

enterprises.... Pockets of residential clusters and business enterprises separated by sparsely settled areas may define a condition euphemistically referred to as "urban sprawl" but may not satisfy the criteria for an unincorporated village.

*Putnam*, 384 N.Y.S.2d at 671, 673 (internal quotations and citations omitted). Accordingly, the record reflects that the OCC correctly understood the attributes of an unincorporated village under New York law.

In applying this law to Jeffersonville Bank's application, the OCC received and reviewed information concerning the physical characteristics of the area in question from sources such as aerial photographs, topographical maps and census data. The OCC examined in detail the area at issue and concluded that it more closely resembled "urban sprawl" than an unincorporated village:

> The area surrounding Community Bank seems to be similar to the area in *Putnam*. The area is a rural lake community in the Catskills with numerous seasonal residents. Route 17 runs along the southern border of the Wal–Mart and is separated from the store and its parking lot by several seasonal bungalows and woods. To the east of the Wal–Mart runs Bard Road, on which there are approximately 35 seasonal bungalows surrounded by a densely wooded area. Anawana Lake Road runs across the northern section of the Wal–Mart. Beyond that is a small pond and woods. Lahanas Road runs north from Anawana Lake Road, directly across from the Wal–Mart. Along this road are approximately 15 seasonal bungalows in wooded surroundings. Both Anawana Lake Road and Lahanas Road come into Route 42 on either side of the Monticello Mall. West of the Wal–Mart toward Community Bank and before Route 42, is a wooded area and a branch of Fleet Bank. Turning north on Route 42, Monticello Mall is on the immediate

right. The Mall houses an [sic] Ames store and 13 small shops, a restaurant, movie theater and bank in addition to Community Bank [sic]. The Town of Thompson Town Hall is directly north of the Monticello Mall's parking lot. The area to the south, east, and north of the Mall are undeveloped and heavily wooded. Approximately a quarter of a mile north off of Route 42 on Concord Road is another small bungalow community. Along Route 42 between Route 17 and Concord Road are 5 restaurants, 4 gas stations and three banks. North of Concord Road is Kiamesha Lake. Along the lakeshore is a small vacant townhouse community, and some water company buildings. About .8 miles north of Community Bank is a residential development called Patio Homes with 80 to 90 homes. Further along on the lake is Concord Resort, which is currently vacant. The resort was purchased by Concord Associates, LP on January 29, 1999, and there are plans for renovating the resort as a conference center. The area is best described as a heavily wooded, sparsely populated area along a commercial corridor. There do not appear to be the cohesive community elements that the courts in *Putnam* and *Patchogue* found necessary to constitute an "unincorporated village."

Administrative Record at 12–13. This record clearly reflects that the OCC concluded that because the area in question was heavily wooded and sparsely populated, it lacked the type of cohesive community generally understood under New York law to be necessary for an area to constitute an unincorporated village. Further, the OCC reviewed and analyzed the contrary conclusion by the NYSBD. The OCC concluded that the NYSBD's determination was at odds with its own precedent and with the facts as the OCC understood them. Moreover, the record reflects that the OCC was generally aware of Community Bank's concerns and factored them into its decision not to revoke its tentative

approval to Jeffersonville Bank's application.

Accordingly, the OCC's conclusion that the Kiamesha area was not an unincorporated village was not only well grounded in the administrative record, it was also legally correct.

■ Finally, contrary to Community Bank's submission, the OCC was not obligated to defer to NYSBD's opinion that Community Bank was entitled to home office protection because the surrounding area constituted an unincorporated village. As previously noted, the OCC engaged in the required fact-based analysis and concluded that the area could be best described as urban sprawl, which, under the reasoning in *Putnam*, 384 N.Y.S.2d at 673, does not qualify as an unincorporated village. But even if this conclusion was incorrect, it is clear that while the NYSBD's opinion was entitled to weight, the OCC is not required to follow the legal interpretations of state regulatory officials.

In *First National Bank of Fairbanks v. Camp*, 465 F.2d 586, 594 (D.C.Cir.1972), *cert. denied*, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 256 (1973) (quoting *Union Savings Bank*, 335 F.2d at 723), the court held that the OCC was not bound by a decision by the NYSBD:

> Since, we are of the opinion that the § 36(c) reference to "statute law of the state" includes legislative enactments and not administrative interpretations of those enactments, the New York Banking Department's view of § 105 of the New York Banking Law would not be authority for the establishment of the Tinker branch.

*See also Bank of the North Shore*, 743 F.2d at 1180 ("the Comptroller is not bound by state agency or state court interpretations of state statutes"); *American Fidelity Bank & Trust Co. v. Heimann*, 683 F.2d 999, 1004 (6th Cir.1982) ("the Comptroller is not bound by a state agency's interpretation of state law"); *Dakota National Bank and Trust Co. v. First National Bank and Trust Co.*, 554 F.2d 345, 355 (8th Cir.), *cert. denied*, 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977) (state regulator's view is not "dispositive"); *First National Bank & Trust Co. v. Smith*, 509 F.2d 663, 666 (1st Cir.1975), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) ("the Comptroller is not bound by a state agency's interpretation of state's statutes"); *First National Bank of Southaven v. Camp*, 471 F.2d 1322, 1325–26 (5th Cir.1973) ("we do not find a long-standing administrative interpretation, nor would the Comptroller necessarily be bound by if there were one").

For the foregoing reasons, this Court concludes that the OCC's findings were not arbitrary or capricious and were supported by the administrative record, and that its conclusions were, in any event, legally correct. Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of defendants.

**SO ORDERED.**